The first case for argument this morning is 19-1063, Grit Energy v. Oren Technologies. Mr. Siegel, whenever you're ready. Good morning, and may it please the Court. Peter Siegel for the Appellant, Grit Energy Solutions. Mr. Siegel, do you agree that independent claim one of the 341 patent is illustrative? I think we do, Your Honor. It's sort of a housekeeping question. Yes, we do. Okay, at pages 32-33 of the blue brief, Grit says, Quote, Constantine and the governing law say, Quote, that the reference numerals in claim five of Constantine are not limiting, but you provide no supporting sites. What support is there in Constantine and the governing law for this proposition? So Constantine says at appendix, I believe it's 175, that the images that it contains, the figures it contains are non-limiting. I'm sorry, that's appendix 173, not 175. And the invention is illustrated by way of non-limiting example in the accompanying drawings in which,  So that's it, appendix 173 and 174. Before the Board, we also cited governing law from the United States and from France. The French law actually requires illustrative images and references to them. So that's in the record, but we haven't relied on it on appeal. What we rely on principally is appendix one. What are you relying on? Because you say the governing law in the blue brief. Don't tell me what you don't. So the governing law requires the court to read Constantine as a skilled artisan would, and Constantine contains this explicit instruction that the figures it contains are non-limiting. So I think when we refer to the governing law, what we're referring to is the law that requires the court to heed Constantine's instruction that figure three is not limiting. So there's something, but I don't know if this is in the record. In the European Patent Convention, there's a rule that says that. In the citation, I don't know if you included that in your briefing or if it was included. Again, we haven't relied on it on appeal. We do refer to French law in the, it's in the record, but I don't have the citation for that handy for you. We principally rely on Constantine's, what we view as an express instruction that figure three is not a limiting example. And that is, I'm sorry, just go back to 173? 173 of the appendix. The invention is illustrated by way of non-limiting example in the accompanying drawings in which, and then it refers to each of the drawings. So just to follow up on Judge Walsh's question. So when you get to claim five of Constantine, which is what's in play here, your view is that the parenthetical eight, therefore going back to figure three, is a non-limiting reference. Yes, Your Honor, precisely. And so on that issue, at 177, claim five, if you ignore the parenthetical references to the non-limiting figure three, reads, a device according to any one of the preceding claims characterized in that the means for mechanical connection of the shutters are constituted by at least one stud provided on one of the shutter blades that lodges in a corresponding orifice of the blade of the other shutter. That's at the bottom of 177. But you agree you could have, if it were non-limiting, there could have been other ways that you would have said it that would have made it more clearly non-limiting. You could have said eight or nine. You could have said EG8, right? I suppose that's possible, Your Honor, but Constantine plainly says that figure three is non-limiting. So we think that's sufficiently clear to establish that any parenthetical reference to it is similarly non-limiting. And one of your friend's responses to that argument, as I recall, is that claim four, where it talks about shutter blades, it refers to both eight and nine. I think their argument is that that suggests that if you were talking about both or either, you could have used both references. Right. And as we point out in our reply brief, claim four, where it refers to both of the shutter blades, is in fact referring to both of the shutter blades, not one or the other shutter blade. And in claim five, our position is you wouldn't put the stud on both shutter blades. You would put the stud or the orifice on one or the other of the shutter blades. So it makes perfect sense that Constantine refers to them one at a time. So just let me ask you, this suggestion that it's non-limiting, I think we all understand that to be the same thing. But is that precisely the same thing as disclosing something? I mean, just because something is non-limiting, I mean, what you have to do here is have a disclosure. That's your argument, that Constantine V actually discloses it. And isn't there a little bit of a daylight between something that's non-limiting versus something where there's an actual disclosure?  And we discuss this by reference to the board's tricycle example, where they say that perhaps disclosing a cycle comprising a wheel would not necessarily disclose a tricycle or a quadricycle or every possible permutation of a cycle comprising a wheel. What we're talking about in this case is a very simple mechanical mechanism for attaching two shutter blades to one another by sticking a protrusion from one into some sort of orifice in the other. That's a basic mechanical connection. And any skilled artisan would have understood, based not only on Claim 5, but also on Constantine's disclosure at Appendix 173, that the purpose of its invention is simply to pair the movement of these two shutter blades, that this is the simplest mechanism for doing so. And by drawing and elucidating one of them and saying that the purpose is a purpose that could easily be accomplished, as any skilled artisan would know immediately by the other configuration, we think that's disclosure. Was there any expert testimony here to say what you're saying here is an attorney argument, which is I would have read Claim 5 as being the narrative and not necessarily being limited by the reference to a person skilled in the art would have read Claim 5? Our expert, Dr. Woolley, testified, and I believe said in his report as well, that the two configurations would accomplish the same thing, and that would have been immediately apparent to a person of skill in the art. And in fact, Oren's own expert conceded at his deposition that the two configurations would equally accomplish Constantine's objective. So we think that on that issue of whether Constantine discloses the claimed configuration, Constantine both includes an express disclosure and the board erred by requiring a verbatim express disclosure and not considering what would have been apparent to a skilled artisan. But we would note that even if the court is not convinced that Constantine makes the disclosure, we also have two arguments that do not depend on Constantine making the disclosure, and the board failed to address those arguments entirely. That's because they thought that you would waive and not make them in the petition, right? It appears that the board did not understand us by the time that it issued its final decision to have made either of the arguments, because they certainly didn't say grid energy has made these arguments and we declined to address them. So your view is that we have to, one, my first question is what the standard of review is for the boards having concluded that you waived it, and what do we review that under? And two, one, to show us in the appendix where you think you preserved it adequately. Sure. So in order to demonstrate that it fairly addressed the arguments that we made, the board would have to provide reasoning sufficient for the court to be able to discern what the board's rationale was. We don't have an express finding from the board that we waived these arguments. What we have is a failure by the board to address the arguments. And so on the second argument that's in our brief, we said to the board, forget about Constantine, disregard Constantine entirely. A skilled artisan would simply have flipped the configuration within Aung San. And we said that the motivation for that change was that the catch is a more complicated and expensive part than the projection. We presented unrebutted evidence on that point. That's at page 41 of our brief. And critically, the board actually acknowledged in its institution to say— No, no, no. Okay. Maybe I'm a little confused. But just on the play with regard to those arguments, I thought the board reached that, but that was in the context of your saying, well, we reject that Constantine, claim five, expressly discloses it. But even if Constantine did, we think there wouldn't have been an adequate motivation to combine that with the other reference because of the expense. That's what I understood the board to be saying. Your Honor, they said that, but in finding that there wasn't an adequate motivation because of the expense, what the board relied on was the expense of Constantine's parts, not the expense of Aung San's parts. And we presented unrebutted evidence that with respect to Aung San's parts, that finding was wrong. So the board imported its findings about Constantine to an argument as to which the findings about Constantine were entirely irrelevant. Well, you want to go back to the second part, I think, of my question, which is show us in the appendix where you think you preserved the argument. Sure. So at Appendix 1747, that's our reply before the board, we repeated that this argument was, quote, independent of Constantine and that Orrin's evidence about Constantine was therefore, quote, irrelevant. And I point out that at Appendix 668 in its institution decision, the board actually said, this is when they instituted review, the board said that this exact argument was independent of Constantine. Give me a chance. Sure. OK, let's look at 668, even if Constantine does not teach. Even if Constantine does not teach stud 15 on Shutterblade 9, petitioner also reasons that, and then it goes from there, that's at the top of the page. And then at the end of that paragraph, the board says this argument, quote, appears independent of Constantine's teachings. And if the court has questions about standing, I'd like to address them, but otherwise, I'll reserve the rest of my time for rebuttal. Thank you. Thank you. Chief Judge Prost, and may it please the court. Jason Wilcox on behalf of Orrin Technologies. I'll address the merits of the board's decision in a second, but the court ultimately does not need to reach the merits because Grit does not have Article III standing to challenge the board's decision, and this appeal should be dismissed. By the certain of the court. I do agree, Judge Wallach, that claim one is illustrative. Now, in the earlier proceeding, there were claims that were dismissed, and prior to that, there were claims that were dismissed without prejudice. So let's focus on the claims that were dismissed without prejudice. Why wouldn't that necessarily have given your colleagues standing here? There are claims that you initially pursued as being infringing. Currently, if you came back and sued them, which you could do because the claims were dismissed without prejudice, there are damages that you could still incur even with the passage of time. So where is the problem with standing? So I think the problem with standing, Chief Judge Prost, is that there's been a 20-month gap between the time we filed our notice of appeal and the time of the dismissal. And in those 20 months, my client took no affirmative acts to assert its patents against Grit. It made no threats that it was going to reassert those claims, and it did nothing that would put them at any risk of being sued. And so I agree that there's a possibility that they could be sued, Chief Judge Prost. That's certainly possible, but as this court said in momenta, a possibility is not enough. There needs to be a certainty. So is this a stipulation in open court that they'll never sue on that? Well, as I think you can probably appreciate, Judge Walk, I don't have authority for my client to make that stipulation. Well, maybe you tell me that they already have made such a stipulation. So my client hasn't made that stipulation. The other side also has never asked for that stipulation. And ultimately, for the standing inquiry, whether I gave that stipulation up here today or not would be irrelevant, since standing is assessed at the time they filed their notice of appeal. And by the time they filed their notice of appeal, you had already alleged that once. You dismissed it without prejudice, not with prejudice. And so the fact that you haven't reinitiated the suit within 20 months, that's sufficient to say that there's no standing here. Well, I think two responses, Chief Judge Prost. The first response is, we stipulated to a dismissal without prejudice, because that's what they suggested. You can see that at Supplemental Appendix 3. And they're the ones who actually drafted that dismissal without prejudice, because they were also dismissing one of their patents and wanted to keep that flexibility. So what? So we didn't propose it. What do we do with that? They weren't contemplating. We weren't arguing the standing case 25 months ago, or whatever it is that they did that. So what? Yes. That means they dismissed it without prejudice. Maybe that's what they wanted to do. But that doesn't resolve the issue of whether or not they currently have standing or risk for a future infringement suit. Well, I think it does show that we weren't playing games when we dismissed without prejudice. No one's suggesting you were playing games, but that doesn't mean that you foreclosed as you responded to Judge Wallach. You can't say with any certainty or any basis at all for saying that you're not going to refile the case. So I can tell you that we don't have any plans presently to do that. And what I can also tell you is that what this court's precedents require is that there be a certainly impending risk. As this court recently said in Fisher and Paykel, it must be an immediate threat of suit. There is no immediate threat of suit here, Your Honor. There's the possibility, which Momenta said is not enough. And they have a second evidentiary problem, which is they haven't put in any declaration showing that anyone at Grit is actually concerned about a suit or that it's affecting their business in any way. In this case, silence appears to be an affirmative statement. And your silence as to it's never going to happen is an affirmative statement. So why don't you go on to your other issues? Yeah, I'm happy to, Judge Wallach. And I think that on the merits, the board's decision is also correct and should be affirmed. Okay, so let's talk about Constantine Claim 5. If there was no parenthetical reference to 8 in the Constantine Claim, and you can look at it. Where is it on page 177? It should be on page 177. Okay, so look at this and pretend that 8 doesn't appear after shutter blades. Where would that leave us? If that were removed, doesn't this language clearly disclose the stud and the orifice can each be on either saw, either shutter? Well, I still don't think it would necessarily disclose that, Chief Judge Prost. But I also think that that doesn't. I'm sorry, I didn't hear. You agree that it would necessarily, if you took out the 8, at least in your view, it would necessarily disclose it. Well, I still don't think it would necessarily disclose it. No, okay. Because it says that there is one shutter that would have a stud that lodges into the corresponding orifice of the other shutter. But it doesn't say where the actuator fits into that. What's required is an actuator having a receptacle. So it would still be missing that, even if you took those numbers out. But here we do have the numbers there. And the board found in its decision, in Appendix 18 through 21, that given those numbers there, and given what you see in Figure 3 on Appendix 181, and given the description that you see on Appendix 175, which discusses the same arrangement where the shutter 8 is attached to the actuator and has a stud on it, that it does not explicitly disclose the arrangement that's required by the claims of the 341 patent. So what is the relevance of the fact that under Figure 3 they say it's non-limiting? What does non-limiting mean in your view? Well, I think that non-limiting means that there could be other ways of doing the arrangement, just as it says. There's actually specific examples on 175 of, for example, flipping it so that the mobile container is on the bottom and the other container is on the top. And there's examples on 175 of the opening means that's actually disclosed is you have a shutter that slides. They say, well, you could have other versions. What that non-limiting is saying is there's other ways to do this device, but it doesn't... Okay, go back to Claim 5, Constantine. What if it said provided on one of the shutter blades, parenthetically, 8 or 9? Would that be a sufficient disclosure? I think that that could be a sufficient disclosure, Chief Judge Brost. How could it not be? Would it be a sufficient disclosure? I mean, this is a hypothetical, but I'd like an answer to the question. Well, once again, Claim 5 doesn't say where the actuator is. So when you don't know where the actuator is at, I can't give you a definite answer about whether the stud is attached to the actuator or whether it's attached to the other shutter. And so Claim 5 is going to be a problem no matter what you do with the numbers. So even if Claim 5 had said on one of the shutter blades either 8 or 9, you still don't think it would be a sufficient disclosure? I still think it wouldn't be a sufficient disclosure. But ultimately here, we do have the numbers that are here, and the Board made findings at Appendix 18 through 21 that given what's actually disclosed in Constantine, that doesn't make the actual express disclosure that they argued. And that's reviewed for substantial evidence, and I think that it's supported by what the record shows. Now, there's this other issue out there, which is whether they preserved or waived this other question. But on the point that your friend raised about the motivation to combine, don't we have cases that suggest that the expense, merely because something costs more than something else, is not a sufficient basis for saying there was no motivation? It seems to me what the Board said here is analysis. They said even if Constantine Claim 5 is a sufficient disclosure, there'd still be a problem. And they also, as your friend pointed out, related it to the expense of Constantine and not to the other reference. But tell me about the extent to which we use as a matter of law the fact that something would have been more expensive to be a sufficient basis for rejecting a motivation to combine. So a couple of responses to that, Chief Judge Prost. First, I agree with you that the cases do say that, but what the Board was doing was responding to the actual motivation to have a combined argument that they made at Appendix 104. And the argument that they made was a person would be motivated to swap Eng-Soon's catch and projection because a receptacle is more expensive to make than a pin. And so you would want to put the receptacle on the support rather than on the mobile container because you have more mobile containers, so you'd want the cheaper part on that. And so what the Board did is it looked at that and it said, we think that's wrong. So if that's the argument that they're presenting, there's nothing wrong with the Board then looking at that argument and saying it's wrong. Now, they also have the point that it's about Constantine rather than Eng-Soon. But if you look at what their expert actually argued at Appendix 541... Well, why don't we look at the Board... I have, I guess, let me see. It's 2701, the Board's site, I think, to the Board's. Or I have something where I have a quote from the Board. In other words, even if we found that Constantine discloses an orifice or receptacle attached to its actuator, which we do not, we also found that transposing Eng-Soon's pen and receptacle as proposed by the petitioner would result in a more expensive system. Correct, and that's in response to their argument that it would have resulted, that the motivation would have been that it resulted in a less expensive system. And the Board is saying, I understand, that's your argument, but the evidence that we actually see in the record from Orin's expert is it would be a more expensive system to do the swap that you're proposing. So it's responding to their argument about it being less expensive, saying, no, actually, you're wrong, it'd be more expensive. So that can't be the motivation to combine, despite the fact that that's what you are telling us. Give me the site for where they said that their argument on motivation involves that it's less expensive. So that would be Appendix 104 is where they made it in the petition, and Appendix 541 is where their expert made it in his declaration. And if you look at Appendix 541 in particular, what he says is, a receptacle in general is less expensive than a pin. And so then our expert comes back and gives a specific example of a pin and a receptacle, what Constantine teaches, and shows that they're more expensive. So their expert offered a generic argument, one that wasn't tied specifically to Eng-Sun's components, and said, as a general matter, receptacles are cheaper than pins. And our expert came back with a specific example of a receptacle and pin and said, I've shown they're more expensive. And the board credited that. And that's what the board is doing at Appendix 22 of its decision. Now they now try and recast this as an argument that has nothing to do with Constantine, but that's not what they said in their petition. If you look at page 104, where they make it in their petition, it's part of a series of arguments they make, starting at Appendix 102, under the heading of, obvious modifications to Eng-Sun in view of Constantine. So this argument was always linked to Constantine. And then the other argument that they've tried to raise on appeal, about whether it would have been obvious to swap Constantine's components, the board actually found waived at Appendix 2695 to 2696. And given that waiver, to answer your question earlier, Chief Judge Gross, about the standard of review, this court has said in Intelligent Biosystems and in Erickson, that that is reviewed for an abuse of discretion. What about the citation they gave us earlier, which I can't remember off the top of my head, to demonstrate that they did not waive that argument? So number one, that's an argument that they would have made in their reply. And it's very clear under cases like Intelligent Biosystems, the argument has to be made in the petition. But number two, that was just a generic argument about whether it would have been, whether it would have made sense to swap Ng-Soon's components. It was not made under a specific heading telling the board, we are making the express argument that this has nothing to do with Ng-Soon. I'm sorry, nothing to do with Constantine. I have a little trouble figuring out what the difference is between a generic argument that someone makes and another kind of argument. What do you mean by a generic argument? What I mean is, it was just responding to the arguments that our expert made. It wasn't under a separate heading or anything signaling for the board that they were making an express argument that Ng-Soon discloses that set Constantine aside. And I think we know they weren't making that argument and the board was allowed to rely on it because if you look at Appendix 71 where they tee up for the board what their arguments are in their petition, what they say is, Ng-Soon discloses everything except for the location of the pin and the receptacle, but that a person of ordinary skill in the art would use Constantine to fill that gap. I'm sorry, you're telling me... Appendix 71. So if you look at 70 to 71 on Appendix. And what they say on those pages is, Ng-Soon and Constantine render claims 1 through 3 and 5 obvious for multiple reasons. For example, Ng-Soon's discharge system includes all the limitations of 1 through 3 and 5 except for the position of the catch and projection for moving the gate. And then say, that Constantine discloses such means can be reversed to what's disclosed in Ng-Soon just as recited in claims 1 through 3 and 5. So that was the argument they were making there. They weren't making a separate argument. If you look what the board instituted on in Appendix 7, it instituted on the combination of Ng-Soon and Constantine. It didn't institute on a combination of Ng-Soon alone. And the only thing they're using Constantine for is to disclose the location of the pin and the receptacle. So there was nothing... The board wouldn't have had any reason to think that they were making this argument, that they're now trying to resurrect in front of the court. And so ultimately, Your Honor, I think that the board looked at this and if you look at Appendix 20, they considered it from the understanding of a person of ordinary skill in the art. And that's exactly what the board's supposed to do and its decision is entitled to... is reviewed for substantial evidence and under that deferential standard of review, I think the board's decision should be affirmed. If there are no further questions. Thank you. So I'd like to address Constantine's Claim 5, then the cost argument, and then the third argument that you just discussed with Mr. Wilcox. On Claim 5, I think my friend's argument reveals that their approach is entirely divorced from the skilled artisan standard. They now won't concede that even if the parentheticals included both the top shutter blades and the bottom shutter blades, this would be a disclosure. On the cost argument, I point the court to Appendix 24 where the... and that's where the board issued its finding that related to Constantine and the relative costs of Constantine and Constantine's components. There is no finding that ties the relevant... the costs of Constantine's components to the relevant question, which is the cost of Eng-Sun's components. At 88, we relied on a separate prior art reference, which is McCarthy, which showed a very complicated catch and demonstrated that the catch was a more complicated part than the projection. There's no finding that rebutts that. There was no evidence that rebutted that. There was only the inquiry into the relative costs of Constantine's parts. Why was there no mention of Mr. Smith's testimony about the expenses of the various pieces, steel, aluminum, and so on, in the blue brief? Because it relates to Constantine's parts, not to Eng-Sun's parts. And I don't believe they've tied those costs to Eng-Sun's parts. So we view that testimony as essentially irrelevant to the inquiry into the relative costs of Eng-Sun's parts. And then the third argument about the mere mechanical fix, Mr. Wilcox says that there was no separate heading in our brief. So in our opening brief at Appendix 105, we made this argument it's a full page, three paragraphs under a separate heading. Then they failed to respond to it before the board. And at Appendix 1748, in our reply before the board, we have a point heading that says unaddressed the obviousness of replacing Eng-Sun's catch and projection with Constantine's stud and orifice. And that's exactly the argument that they say we did not make. So we submit that on the latter two issues, the board simply failed to address arguments that we fairly presented to it, one of which it understood we had fairly presented to it at the time it instituted, and that with respect to Constantine, there was a disclosure. Can you just take the last 55 seconds and since your friend did raise the standing issue, do you want to respond to that very briefly? Sure. So we think Arrowhead conclusively demonstrates that we have standing here. Arrowhead says that where there is a, as the court now knows, a current activity that's been expressly charged, there is a per se rule that there is standing. Yeah, but your friend relies on the fact that one, as you heard, you were the one that prompted the dismissal without prejudice. And he relied also on, he emphasized also the fact that you waited 22 months and nothing has happened, no suggestion that you're going to be subject to suit in the future in this 22-month period that's elapsed. Sure, but as Judge Wallach has pointed out, they refused to affirm that they won't sue us. So they've accused us of infringement. They've never retracted the accusation of infringement. They've only retracted essentially their lawsuit. But they believe and they've told the federal district court that we infringed their patent. And now they refuse to tell this court that they won't sue on that basis. So we're squarely within arrowhead. And as we point out in our briefs, the court has repeatedly rejected this past versus present distinction that is what their argument now boils down to. If there are no further questions, thank you. We thank both sides for cases submitted.